**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 25-4317**

───────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAVON EMORY JENKINS,

Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Joseph F. Anderson, Jr., Senior District Judge.  (3:24-cr-00253-JFA-1)

───────────

Submitted:  January 6, 2026                    Decided:  February 18, 2026

───────────

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ON BRIEF:**  Suha Najjar, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.  Bryan P. Stirling, United States Attorney, Ariyana N. Gore, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Javon Emory Jenkins appeals his conviction, entered pursuant to a conditional guilty plea, for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e).  On appeal, Jenkins challenges the district court's denial of his motion to suppress the firearm seized during a search of his vehicle.  Specifically, he contends that the investigating officers lacked reasonable articulable suspicion to detain Jenkins based on Jenkins's coworker's belief that Jenkins had stolen a firearm out of the coworker's vehicle.  Assuming that reasonable suspicion existed, Jenkins argues that the officers unlawfully exceeded the necessary scope and duration of the stop.  Finally, Jenkins contends that his ultimate consent to the officers' search of his vehicle was involuntary.  For the following reasons, we affirm.

"When, as here, a district court denies a motion to suppress, we review the court's legal conclusions de novo and its factual findings for clear error, considering the evidence in the light most favorable to the government."  *United States v. Turner*, 122 F.4th 511, 516 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1894 (2025) (citation modified).  "A court reviewing for clear error may not reverse a lower court's finding of fact simply because it would have decided the case differently.  Rather, [it] . . . must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed."  *United States v. Ferebee*, 957 F.3d 406, 417 (4th Cir. 2020) (citation modified).  "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been

2

sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (citation modified).

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991) (citation modified). In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the Supreme Court recognized that the police may constitutionally "conduct a brief, investigatory stop when [an] officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

When reviewing the constitutionality of an investigatory stop, we consider whether the totality of the circumstances gave the officers a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Mayo*, 361 F.3d 802, 805 (4th Cir. 2004) (citation modified); *see United States v. Mitchell*, 963 F.3d 385, 390 (4th Cir. 2020) ("Facts innocent in themselves may together amount to reasonable suspicion."). Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch'"; however, reasonable suspicion may be based on inferences made on the basis of police experience. *Terry*, 392 U.S. at 27. Indeed, "law enforcement officers . . . may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Johnson*, 599 F.3d 339, 343 (4th Cir. 2010) (citation modified).

3

An informant's tip alone, if supported by "enough indicia of reliability," can justify a *Terry* stop. *Adams v. Williams*, 407 U.S. 143, 147 (1972); *see also United States v. Kehoe*, 893 F.3d 232, 238 (4th Cir. 2018) ("The degree to which the police may rely on a tip to establish reasonable suspicion depends on the tipster's veracity, reliability, and basis of knowledge."); *United States v. Harris*, 39 F.3d 1262, 1269 (4th Cir. 1994) (holding that "information of criminal activity given by a known reliable informant is enough to sustain a *Terry* stop" (citation modified)). "Where the informant is known . . . , an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." *United States v. Perkins*, 363 F.3d 317, 323 (4th Cir. 2004).

Based on these principles and the totality of the circumstances, we discern no error in the district court's determination that the officers here had reasonable suspicion to support Jenkins's seizure. The officers received their tip from an individual who made his report in person and provided the officers with all of his personal identifying information. The basis of informant's knowledge—his presence with Jenkins throughout the day, knowledge of the firearm's location, and awareness of the corroborating timing of his suspicions—supported his tip's reliability. Finally, the officers corroborated several aspects of the tip before detaining Jenkins.

Jenkins further contends that the officers exceeded the lawful scope and duration of the stop. Under *Terry*, an investigative detention can last no longer than reasonably necessary to carry out the "mission" of the stop. *See United States v. Perry*, 92 F.4th 500, 510 (4th Cir. 2024). A stop's primary mission is "to verify or dispel [an] officer's

4

suspicion." *Id.* at 511 (citing *United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007)). Accordingly, "officers may constitutionally detain suspects until their suspicions should be reasonably verified or dispelled." *Id.* at 511. Here, the officers explained the nature of their investigation, performed an initial frisk, and then reasonably attempted to verify or dispel the suspicion that the stolen firearm could be in Jenkins's vehicle. Based on the officers' focus on determining the veracity of the tip throughout the encounter with Jenkins and their reasonable belief that the stolen firearm could be either on Jenkins's person or in his vehicle, we discern no error in the district court's determination that the officers did not unreasonably prolong the stop.

Finally, Jenkins contests the voluntariness of his ultimate consent to the search of his vehicle. Voluntary consent is another exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 222 (1973). "The voluntariness of consent to search is a factual question," and a reviewing court "must affirm the determination of the district court unless its finding is clearly erroneous." *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996). To determine whether consent was voluntary, we examine the totality of the circumstances, including the characteristics of the individual who supposedly consented—his age, maturity, intelligence, experience—and the conditions under which he gave consent—including the officer's conduct, the number of officers present, as well as the duration, timing, and location of the search. *Id.* Whether an individual knows of his right to refuse consent is a relevant factor, "although the Government need not demonstrate that the [individual] knew of his right to refuse consent to prove that the consent was voluntary." *Id.*

5

The totality of the circumstances here supported the district court's conclusion that Jenkins voluntarily consented to the search of his vehicle. Jenkins knew of his right to refuse consent, as demonstrated by the fact that he initially declined consent to search his car. Jenkins's personal characteristics further supported the conclusion that he understood his rights—Jenkins was 20 years old, gainfully employed, and had at least some prior experience with the criminal justice system. Jenkins was also able to communicate clearly with the officers and demonstrated an understanding of the situation. Finally, the officers' conduct did not suggest that Jenkins's consent resulted from undue coercion or threats. We therefore discern no error in the district court's denial of Jenkins's motion to suppress.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*